UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW HAYDEN,<br><br>Plaintiff,<br><br>v.<br><br>JIMMY WANG, et al.,<br><br>Defendants. | Case No. 13-cv-03139-JST<br><br>**ORDER GRANTING MOTION TO SEVER AND REMAND AND DENYING CROSS-MOTION TO STAY OR TRANSFER AS MOOT**<br><br>Re: ECF Nos. 11, 15 |

In this securities class action for violations of sections 25401, 25501, and 25504 of the California Corporations Code, Plaintiff Matthew Hayden moves to sever the claims against Defendant Worldwide Energy & Manufacturing, Inc. ("WEMU"), which is in bankruptcy, and remand the remainder of the action to California state court.

For the reasons set forth below, the Court will grant the motion. The Court will also deny Defendants' cross-motion to stay, or in the alternative to transfer, as moot.

## I.   BACKGROUND

Defendant Worldwide Energy & Manufacturing, Inc. ("WEMU") is a Colorado corporation with its principal place of business in California. Defendant Ladenburg Thalmann & Co., Inc. ("Ladenburg"), a New York-based financial firm that also conducts business in Florida, served as the placement agent for WEMU's January and February 2010 private placement offerings. Also named as Defendants are several former WEMU officers and directors (collectively, the "Individual Defendants"). Jimmy Wang, Mindy Wang, and Jeffrey Watson are former WEMU officers; Jennifer Maliar, Michael Steingrebe, Jehu Hand, Lauren Byrne, and Gerald Deciccio are former WEMU directors. Defendants Maliar, Byrne, and Steingrebe are residents of Colorado. Plaintiff and Defendants Jimmy and Mindy Wang, Watson, Hand, and Deciccio are California residents.

Plaintiff Matthew Hayden, a California resident, purchased 21,996 shares of WEMU stock through a private placement in January 2010. First Am. Compl. ("FAC"), ECF No. 1, Ex. B ¶ 23. Plaintiff filed this class action on behalf of himself and other similarly situated WEMU investors in San Mateo County Superior Court on December 4, 2012. Not. of Removal, ECF No. 1 ¶ 2. Plaintiff alleges that Defendants committed securities fraud arising out of WEMU's Securities Purchase Agreements for its private placement transactions in January and February of 2010 because the agreements "contained material omissions and misstatements and that investors were damaged as a result of purchasing WEMU's stock based upon the allegedly misleading Securities Purchase Agreements." Not. of Removal ¶ 5. Plaintiff filed his First Amended Complaint ("FAC") on February 11, 2013. Id. There are fewer than one hundred class members. Mot. to Sever Action and Remand Severed Claims to State Court ("Mot."), ECF No. 11 at 2.

On April 29, 2013, Ladenburg filed a demurrer to the FAC for failure to state a cause of action against Ladenburg. Id. ¶¶ 3, 8. Plaintiff responded to the demurrer on July 3, 2013. Id. ¶ 8. On July 5, 2013, WEMU filed for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Colorado, thereby staying any pending litigation for relief against WEMU.[1] Id. ¶ 4. Ladenburg removed this action to this Court on July 7, 2013, based on the Court's "related to" bankruptcy jurisdiction, pursuant to 28 U.S.C. § 1334(b).

Because WEMU has filed for Chapter 11 relief and has received an automatic stay, Plaintiff recognizes that there is little chance of obtaining relief from WEMU's estate and no longer desires to pursue WEMU in this action. Mot. at 2. Consequently, Plaintiff moves to sever WEMU from the action and remand Plaintiff's remaining claims to state court because (1) this California state securities law class action is a local controversy governed by California state law; (2) Plaintiff requests a jury trial; and (3) Plaintiff and the majority of defendants reside in or do business with California. Id.

Defendants Watson, Jimmy and Mindy Wang, and Maliar (collectively, the "Responding

---

[1] In re Worldwide Energy & Manufacturing, Inc., No. 13-21577-MER.

1 Individual Defendants") filed an opposition to Plaintiff's motion, Indiv. Defs' Opp'n, ECF No. 16,

2 as did Ladenburg, Ladenburg Opp., ECF No. 15.

3 Ladenburg also filed a cross-motion to stay, or in the alternative, to transfer this action to

4 the bankruptcy court. Cross-Mot., ECF No. 15.

5 The motions have both been fully briefed, and the Court held a hearing on both motions on

6 November 7, 2013.

## II. DISCUSSION

### A. Motion to Sever

"On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. Rule 21 "'should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding.'" Otsuka v. Polo Ralph Lauren Corp., No. 07-02780-SI, 2010 WL 366653, at *7 (N.D. Cal. Jan. 25, 2010) (quoting Fed. R. Civ. P. 1).

Plaintiff moves to sever WEMU and to remand the remainder of this action. The First Amended Complaint alleges that WEMU committed securities fraud in violation of California Corporations Code section 25401, as well as statutory and common law fraud. Plaintiff alleges that the remaining Defendants are liable pursuant to California Corporations Code section 25504, which imposes joint and several liability on control persons, executives, and directors of primary violators, and section 25504.1, which imposes liability on those who materially assist in any violation of section 25401, as well as for statutory and common law fraud.

The Ladenburg and Responding Individual Defendants oppose severance, arguing that this class action cannot proceed without WEMU — the primary violator — because the non-WEMU Defendants are only alleged to be subject to secondary liability, and a finding of secondary liability cannot exist without first finding WEMU primarily liable. Ladenburg Opp. at 8, 11; Responding Individual Opp'n at 5.

The Court is not persuaded by this argument. The law is clear that the alleged primary violator is not required to be named as a defendant for a plaintiff to proceed against other defendants who are jointly and severally liable, or, with respect to section 25504.1, directly liable

1    for materially assisting the primary violation.  See Moss v. Kroner, 197 Cal. App. 4th 860, 865
2    (2011).  Moss was a factually similar California securities fraud case concerning a Ponzi scheme.
3    In that case, the plaintiff did not sue the primary violator or its president because a federal court
4    stay prevented them from being named in lawsuits.  Id.  The plaintiff also did not sue the seller of
5    the note, because those claims had already been settled.  Id.  Instead, the plaintiff sued the
6    insurance company for materially aiding in the sale of the note with the intent to defraud "by
7    means of written and oral communications including an untrue statement of material fact or
8    omitting a material fact necessary to make the statement not misleading."  Id. at 885–86, 870.  The
9    court held that the plaintiff sufficiently alleged a claim for violation of section 25401 by means of
10   sections 25504 and 25504.1, even though the primary violator was not party to the suit, and even
11   though the secondary violator was not in strict privity with the plaintiff.  Id. at 873.

12   Courts evaluating the substantially similar federal securities laws have come to the same
13   conclusion.  See In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 285 (3d Cir. 2006)
14   ("[T]here is no requirement in the language of either [federal securities] statute that the controlled
15   person be named as a defendant as a predicate to imposing liability upon the controlling individual
16   defendants.  A plaintiff need only establish the controlled person's liability."); S.E.C. v. Hawk, No.
17   05-cv-00172-LRH, 2007 WL 2257321, at *3 (D. Nev. Aug. 3, 2007) ("This court agrees with the
18   majority of courts and finds that the primary violator need not be joined in an action against a
19   control person.  The court finds nothing in the language of Section 20(a) that would mandate
20   joinder of the controlled entity as a defendant.").

21   It is not necessary for WEMU to be a party before Plaintiff can proceed against the non-
22   WEMU Defendants.  The severance of WEMU — the alleged primary violator — would not
23   defeat Plaintiff's class action against the remaining defendants.

### B.     Motion to Remand

25   As with any motion to remand, the removing party bears the burden of establishing federal
26   subject matter jurisdiction.  Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988).
27   To determine whether remand is appropriate in a multi-defendant case where one
28   defendant has filed for bankruptcy, the Court must engage in a two-part inquiry: (1) whether the

bankruptcy court has jurisdiction over the matter because it arises in or is related to a bankruptcy proceeding; and if so, (2) whether the court should abstain on equitable grounds from hearing the matter.

### 1. "Related To" Bankruptcy Jurisdiction

Federal district courts have original — though not exclusive — jurisdiction over all civil proceedings "arising under" the bankruptcy code, or "arising in or related to" cases under the bankruptcy code. 28 U.S.C. § 1334(b). The parties agree that the Court lacks "arising under" and "arising in" jurisdiction, but dispute whether the Court has jurisdiction because the case is "related to" a bankruptcy proceeding.

To determine the scope of "related to" jurisdiction, the Ninth Circuit has adopted the Pacor test, which provides that federal courts have "related to" jurisdiction over any proceeding where "the outcome could *conceivably have any effect* on the estate being administered in bankruptcy." In re Pegasus Gold Corp, 394 F.3d 1189, 1193 (9th Cir. 2005) (quoting Pacor, Inc. v. Higgin, 743 F.2d 984, 994 (3d Cir. 1984) overruled on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 134–35 (1995)).

"[Bankruptcy C]ourts in the Ninth Circuit have held that a defendant's claim for contractual indemnity against an entity in bankruptcy gives rise to 'related to' jurisdiction." Carpenters Pension Trust for S. Cal. v. Ebbers, 299 B.R. 610, 613 (C.D. Cal. 2003). See, e.g., Hendricks v. Detroit Diesel Corp., No. 09-cv-3939-EMC, 2009 WL 4282812, at *4 (N.D. Cal. Nov. 25, 2009) (finding indemnification agreement sufficient to sustain "related to" jurisdiction; citing cases); In re Enron Corp., 296 B.R. 505, 508 (C.D. Cal. 2003) (citing In re Celotex Corp., 124 F.3d 619, 627 (4th Cir. 1997); Williams v. Shell Oil Co., 169 B.R. 684, 689–90 (S.D. Cal. 1994); Nat'l Acceptance Co. v. Levin, 75 B.R. 457, 458 (D. Ariz. 1987)).

Here, even if the claims against WEMU are severed, the parties do not dispute that WEMU has certain indemnification obligations to Ladenburg and its directors and officers; any finding in this action against those Defendants could alter WEMU's liabilities and have an effect on WEMU's estate. Therefore, the Court concludes that "related to" bankruptcy jurisdiction exists.

### 2. Equitable Grounds for Abstention

When a court has determined that a proceeding has "related to" bankruptcy jurisdiction, courts consider up to fourteen equitable factors to decide whether to remand the case to state court. The equitable factors are:

(1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention;
(2) extent to which state law issues predominate over bankruptcy issues;
(3) difficult or unsettled nature of applicable law;
(4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding;
(5) jurisdictional basis, if any, other than § 1334;
(6) degree of relatedness or remoteness of proceeding to main bankruptcy case;
(7) the substance rather than the form of an asserted core proceeding;
(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
(9) the burden on the bankruptcy court's docket;
(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
(11) the existence of a right to a jury trial;
(12) the presence in the proceeding of nondebtor parties;
(13) comity; and
(14) the possibility of prejudice to other parties in the action.

Enron, 296 B.R. at 509 n.2 (citing Davis v. Life Inv. Ins. Co. of Am., 282 B.R. 186, 194 n.7 (S.D. Miss. 2002)). See also In re Cedar Funding, Inc., 419 B.R. 807, 820 (B.A.P. 9th Cir. 2009) (citing Enron, 296 B.R. at 509 n.2).

Courts have broad discretion to remand cases over which they have "related to" bankruptcy jurisdiction. Enron, 296 B.R. at 508. "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). "'When a state court proceeding sounds in state law and bears a limited connection to a debtor's bankruptcy case, abstention is particularly compelling.'" Enron, 296 B.R. at 509 (quoting In re United Container LLC, 284 B.R. 162, 177 (Bankr. S.D. Fla. 2002)). See also In re Schwartz, No. 09-cv-05831-EJD, 2012 WL 899331, at *2 (N.D. Cal. Mar. 15, 2012) (noting

6

1  predominance of state law issues over bankruptcy issues is "most important[]" factor: "A suit not
2  based in federal law and only tangentially related to a pending bankruptcy should be remanded to
3  the more experienced state forum for reasons of comity and pragmatism"); Hendricks, 2009 WL
4  4282812, at *8 (N.D. Cal. Nov. 25, 2009) (equitable remand was appropriate where only state law
5  claims were asserted).

6  Here, factors 2, 5 through 8, and 11 through 13 all favor remand, see Enron, 296 B.R. at
7  508–09: the class action claims arise exclusively out of California state law (factor 2); there is no
8  basis for federal jurisdiction other than the Court's "related to" bankruptcy jurisdiction because
9  there is no diversity or federal question jurisdiction (factor 5); the state law claims may be severed
10 from the bankruptcy proceeding because they are not related to the core proceedings, and the
11 bankruptcy court may enforce any resulting judgment (factors 6–8); Plaintiff has asserted a right to
12 a jury trial (factor 11); Plaintiff and the non-WEMU defendants are all non-debtors (factor 12);
13 and comity favors remand, because the Plaintiff's claims arise under the California Corporations
14 Code and Plaintiff and members of the putative class purchased their securities in California
15 (factor 13). Compl. ¶¶ 1, 4; In re Roman Catholic Archbishop of Portland in Or., 338 B.R. 414,
16 422 (Bankr. D. Or. 2006) ("Comity weighs in favor of remand, because these claims turn largely
17 on state law."); Enron, 296 B.R. at 509 ("Comity dictates that California courts should have the
18 right to adjudicate the exclusively state law claims involving California-centric plaintiffs and
19 California-centric transactions.").

20 Defendants argue that several factors weigh against remand. First, both Ladenburg and the
21 Responding Individual Defendants argue that remand will affect the efficient administration of the
22 bankruptcy estate because WEMU will be the key source of evidence in the state court action.
23 The Court is not persuaded that the burden on WEMU will be substantially higher in the state
24 court than it would be if the action remains in the bankruptcy court. The factor is, at most, neutral,
25 as the Enron court found on similar facts. Enron, 296 B.R. at 509.

26 Ladenburg also argues that it will be prejudiced by proceeding in this action without
27 WEMU because "without WEMU in the case, Ladenburg will be forced to defend WEMU's
28 conduct on its own, without knowledge of the essential facts and with no assurance of cooperation

7

from WEMU." Ladenburg Opp. at 12.  As set forth above, there is no requirement that Plaintiff establish WEMU's liability as a predicate to bringing its claims against Ladenburg, so WEMU is not a necessary party to the state court case.  More significantly, there is nothing unusual about the general circumstance Ladenburg describes.  A defendant sometimes finds herself having to excuse, explain, or blame the conduct of an absent third party as part of her defense to a lawsuit.  When that happens, the defendant never has an "assurance of cooperation" from the absent third party.  Moreover, there is no reason to expect that Ladenburg would have an "assurance of cooperation from WEMU" if Plaintiff's claims remained in the bankruptcy court.

Ladenburg also argues that the lawsuit will proceed more slowly in state court because of the state courts' financial circumstances.  This argument is based solely on a County Superior Court Presiding Judge's message posted on his court's website, and on a news article about the condition of state court funding.  Neither source says anything about the relative speed with which Plaintiff's claims would be resolved in state versus federal court.  Tellingly, the Plaintiff — the party seeking a recovery in the action — is in favor of remand to the state court.  The Court assumes that Plaintiff would not be seeking a remand if the effect would be to delay the ultimate resolution of the case.

In all, the Enron equitable factors militate in favor of remand.

### III.   CONCLUSION

For the reasons stated above, the Court GRANTS the motion to sever and remand.  Plaintiffs' claims against Worldwide Energy & Manufacturing USA, Inc., are hereby severed.  The remaining claims are hereby REMANDED to the San Mateo County Superior Court.

Since the Court remands this action for the remaining defendants to state court, the Court need not address the Ladenburg Defendant's cross-motion to stay, or alternatively, to transfer, and that motion is denied as moot.

**IT IS SO ORDERED.**

Dated: November 13, 2013

JON S. TIGAR
United States District Judge